IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff(s)**<br><br>v.<br><br>[1] JOSE J. GALIANY-CRUZ,<br>[12] JUAN CARRION-TORRES,<br><br>**Defendant(s)** | **CRIMINAL NO.** 03-083 (JAG) |

**MEMORANDUM AND ORDER**

On March 17, 2004, a jury convicted defendants Jose J. Galiany-Cruz ("Galiany-Cruz") and Juan Carrion-Torres ("Carrion-Torres") on charges of conspiring to possess with the intent to distribute heroin, marijuana and cocaine, and of aiding and abetting one another in furtherance of said drug trafficking crimes. (See Indictment, Docket No. 2, and Jury Verdicts, Docket Nos. 326 and 327). Additionally, they were convicted of possessing and using firearms and of killing Alexander Rivera-Maldonado on March 16, 2001 in furtherance of the conspiracy. (See Id.). Galiany-Cruz was also convicted for the murder of Alexis J. Torres and Yamil H. Santiago-Rodriguez ("Yamil"), among other crimes. (See Id.).

On August 16, 2006, Carrion-Torres moved for a new trial pursuant to Fed.R.Crim.P. 33 due to Government's non-disclosure of

Criminal No. 03-083 (JAG)                                                  2

exculpatory evidence. (Docket No. 670-1). On August 30, 2006, Galiany-Cruz filed a motion for joinder of Carrion-Torres's motion for new trial (Docket No. 673) and on September 13, 2006, he filed a supplement to the motion for new trial based on Brady v. Maryland, 373 U.S. 83 (1963), and Sixth Amendment violations (Docket No. 678). On October 25, 2006, the Government filed its opposition to all of the aforementioned motions. (Docket No. 684-1). On November 17, 2006, Carrion-Torres replied to the Government's opposition (Docket No. 687) and on November 19, 2006, Galiany-Cruz filed his reply (Docket No. 688). For the reasons discussed below, the Court **DENIES** defendants' motions for new trial.

A. Standard for new trial based on newly discovered evidence within Brady

Pursuant to Fed.R.Crim.P.33(a), "[u]pon the defendant's motion, the Court may vacate any judgment and grant a new trial if the interest of justice so requires." If grounded on newly discovered evidence, the defendant may bring his motion for a new trial within three (3) years after the verdict or finding of guilty. Fed.R.Crim.P. 33(b)(1).

Brady requires the Government to disclose exculpatory evidence which is "material either to guilt or to punishment." Brady, 373 U.S. at 87. A petitioner must show, in order to establish a Brady violation, that: (1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the Government

Criminal No. 03-083 (JAG)                                              3

suppressed the evidence; and (3) prejudice ensued from the suppression (i.e., the suppressed evidence was material to guilt or punishment). Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Under First Circuit Standards, for a district court to grant a new trial based on newly discovered evidence that was subject to disclosure under Brady, the defendant must demonstrate "both that the evidence is material and that there is a 'reasonable probability' that it would produce an acquittal upon retrial." United States v. Wall, 349 F.3d 18, 22 (1st Cir. 2003) (citing United States v. Josleyn, 206 F.3d 144, 151 (1st Cir. 2000)). It is not enough for the defendant to show "the mere possibility that an item of undisclosed information might have helped [his] defense, or might have affected the outcome of the trial." United States v. Hansen, 434 F.3d 92, 102 (1st Cir. 2006) (citing United States v. Garcia-Torres, 341 F.3d 61, 70 (1st Cir. 2003) (quotations and citations omitted)). A defendant must show that the evidence is of such probative value that there is a reasonable probability it would produce a different result. Id.

For newly discovered evidence to warrant a retrial in a criminal case, the existence of the required probability of reversal must be gauged by an objectively reasonable appraisal of the record as a whole, not on the basis of wishful thinking, rank conjecture, or unsupportable surmise. United States v. Natanel, 938 F. 2d 302, 313 (1st Cir. 1991). The petitioner must show, among other things,

Criminal No. 03-083 (JAG)                                                    4

that the new evidence is material and is not merely cumulative or impeaching. United States v. Benavente-Gomez, 921 F. 2d 378, 382 (1st Cir. 1990).

Although impeachment evidence and exculpatory evidence can provide grounds for a new trial, impeachment evidence only merits a new trial when "the evidence is highly impeaching or when the witness' testimony is uncorroborated and essential to the conviction." Garcia-Torres, 341 F.3d at 70 (citing U.S. v. Martinez-Medina, 279 F.3d 105, 126 (1st Cir. 2002)). If it does not bear directly on the defendant's guilt or innocence, impeachment evidence does not rise to the level of materiality that would be likely to cause a different result at a new trial. Benavente-Gómez, 921 F. 2d at 383; Barrett v. United States, 965 F. 2d 1184, 1195 (1st Cir. 1992). Suppressed impeachment evidence is immaterial under Brady if the evidence is cumulative or impeaches on a collateral issue. Conley v. United States, 415 F.3d 183, 189 (1st Cir. 2005); United States v. Dumas, 207 F.3d 11, 16 (1st Cir. 2000). Exculpatory evidence requires that the evidence be material and "[t]he materiality standard is not met by 'the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial.'" Garcia-Torres, 341 F.3d at 70 (quoting United States v. Hamilton, 107 F.3d 499, 509 (7th Cir. 1997); United States v. Agurs, 427 U.S. 97, 109-10 (1976)). Ultimately, "[t]he question is not whether the defendant

Criminal No. 03-083 (JAG)                                            5

would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Strickler, 527 U.S. at 289-90 (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)).  The due process duty imposed by Brady is meant to protect defendant's right to a fair trial.  United States v. Ruiz, 536 U.S. 622, 626-28 (2002).

B. Arguments by Defendants and the Government

In his motion for new trial, Carrion-Torres alleges that the Government violated Brady because it failed to disclose exculpatory evidence.  Carrion-Torres argues that two Drug Enforcement Agency ("DEA") Reports that would have allegedly led to the testimony of several confidential sources to the effect that Carrion-Torres was "actively at war" with Galiany-Cruz were never handed over to the defense.  He sustains that the information contained in said reports would have confirmed his allegation that he was not a member of Galiany-Cruz's criminal organization and consequently, could not form part of the charged conspiracy. Specifically, one of the DEA Reports would show, according to Carrion-Torres, that instead of an alliance, there was a war between him and Galiany-Cruz since October 2001 and the other DEA Report would confirm that said war continued as of March 2002.  The Government's failure to disclose these reports, argues the defendant, was "clearly prejudicial" because it did not allow the defense to present an alternative theory: that

Criminal No. 03-083 (JAG)                                                    6

Carrion-Torres and Galiany-Cruz were enemies by October 2001 and could therefore not be part of the same conspiracy.

In addition, defendant Carrion-Torres contends that the suppressed evidence would have been essential to refute testimony by Carlos Ivan Torres-Martinez ("Torres-Martinez") and Carlos Bonilla Santos ("Bonilla") that served to suggest a former alliance between Carrion-Torres and Galiany-Cruz.  Specifically, Carrion-Torres contends that the evidence would refute testimony given by Torres-Martinez about Carrion-Torres and Galiany-Cruz being together in March 2001, about Galiany-Cruz ordering the murder of Yamil in October/November 2001 to protect Carrion-Torres, and about the break up of their alliance.  He also contends that Bonilla's testimony about the two being together in a car and lending weapons to one another would have been refuted by the new evidence.

In his motion for new trial, Galiany-Cruz joins in Carrion-Torres's arguments and further alleges that the Government failed to disclose that co-defendant Julio Mateo-Espada ("Mateo-Espada") was in New York at the time of Yamil's murder in October/November 2001. This information, according to Galiany-Cruz, would have undermined Torres-Martinez's testimony as to Mateo-Espada being present when Galiany-Cruz gave instructions to kill Yamil.  Additionally, he argues that the Government failed to disclose several DEA Reports of Investigation as well as a Federal Bureau of Investigation ("FBI") Report which allegedly point to the responsibility of individuals

Criminal No. 03-083 (JAG)                                                    7

other than him in the killing of Yamil and would have therefore impeached Torres-Martinez's testimony at trial.  Galiany-Cruz also asks the Court to take notice of proceedings held before state court according to which a sworn statement by a police officer revealed that the gun used to kill Yamil belonged to someone other than him and in which testimony was given that Galiany-Cruz asked someone other than Torres-Martinez to murder Yamil.  These statements are allegedly in direct contradiction with what Torres-Martinez testified at the trial: that Galiany-Cruz asked him to murder Yamil and that his gun was used in the murder.

   The Government filed an opposition to the defendants' motions for new trial arguing that the newly discovered evidence does not amount to exculpatory or impeachment evidence sufficient to change the end result of the trial.  Specifically, the Government contends that evidence to the effect that Galiany-Cruz and Carrion-Torres were at war with each other does not exculpate the defendants "from having been involved in a narcotics trafficking conspiracy and of having engaged in acts of violence in furtherance of such conspiracy."  Therefore, the evidence would change nothing about the final outcome of the case.  The same argument is made regarding the DEA Reports that are claimed to be newly discovered: that their presentation to the jury would have not changed the outcome of the trial, even if believed by the jury.  With respect to defendant Galiany-Cruz's allegation regarding co-defendant Mateo-Espada's

Criminal No. 03-083 (JAG)                                              8

whereabouts at the time of Yamil's murder, the Government contends that Galiany-Cruz's averment is factually incorrect and that Mateo-Espada could have very well been in Puerto Rico at that time.

Carrion-Torres replied to the Government's opposition arguing that the suppressed evidence does indeed undermine the verdict because it frustrates the theory that Carrion-Torres was a member of the *charged* conspiracy (with Galiany-Cruz) although it does not necessarily negate the possibility that Carrion-Torres was involved in *a* conspiracy to sell narcotics.  Being that the Government has the burden of proving that he participated in the conspiracy charged in the indictment, Carrion-Torres argues, evidence that would have contradicted "important and necessary elements of the Government's case" would have changed the outcome of the trial.  Galiany-Cruz also filed a reply arguing that because the Government violated his 6th Amendment and Brady rights, he did not have the opportunity to effectively litigate a proper defense.

C. Discussion

This Court finds that the defendants have not met their burden in proving that they have a right to a new trial under Rule 33. Even if certain evidence was not made available to the defendants at the time of trial, the withheld evidence is not material and an acquittal would not probably result upon retrial of the defendant.

The Court has reviewed the DEA Reports allegedly withheld by the prosecution and containing the information that purportedly

calls for a new trial. First, the information contained therein is cumulative evidence as to a war existing between the defendants, since it echoes testimony given by Torres-Martinez and Bonilla. Evidence of the feud between Carrion-Torres and Galiany-Cruz was presented at trial when Bonilla testified that Torres-Martinez had told him that Carrion-Torres was out to kill Galiany-Cruz (See Excerpt 3/10/04, p. 55), and when Torres-Martinez testified that Carrion-Torres was no longer with Galiany-Cruz by March 2002 (See Excerpt 3/12/04, p.3-7). So, evidence to the effect that Carrion-Torres and Galiany-Cruz were enemies at one point was presented to the jury. The only new element is the moment in time in which the feud began, since defendants allege it was at least as of October 2001 and the evidence presented points to a later development. Yet, even if the allegedly suppressed evidence constituted new information that could prove that Galiany-Cruz and Carrion-Torres were rivals since as early as October 2001, it does not amount to exculpatory because, contrary to the defendants' allegations, it does not undermine the jury's finding that a conspiracy occurred between the two. The jury in this case concluded that these men conspired to distribute drugs, in spite of having been presented evidence that pointed to a feud between Carrion-Torres and Galiany-Cruz at least by March 2002. The new evidence would only alter the possible start date of the feud but even if believed by the jury, it does not exculpate defendants from their illegal actions. Moreover,

and contrary to defendants' assumption, this Court does not believe it to be impossible for gang members that were rivals at one point to conspire with one another, before or after their rivalry, in order to benefit from drug-trafficking activities. In any case, the evidence presented against the defendants in this case was plentiful and compelling. (See United States v. Gonzales, 121 F.3d 928 (5th Cir. 1997), where the court concluded that the Government's alleged suppression of a coconspirator's statement that he did not believe that the defendant had been involved in the drug conspiracy of which he was convicted was harmless because not only had other witnesses testified that the defendant was not a member of the conspiracy but also, the evidence against the defendant was overwhelming.)

The Defendants also argue that the contents of the DEA Reports would undermine the jury's verdict because they would impeach Torres-Martinez's testimony. In doing so, they sustain that "[t]he verdict... was based almost entirely on the testimony of cooperating defendant Torres Martinez." (See Docket No. 670-1 at 12). Based on this assumption, they argue that any evidence to undermine the jury's confidence in said testimony is enough to warrant new trial. Yet, the evidence in the DEA Reports does not impeach Torres-Martinez's testimony in a way that touches upon the defendants' guilt or innocence. Defendants allege that the DEA Reports would impeach the following testimony by Torres-Martinez: that Carrion-Torres used to do everything Galiany-Cruz asked of him (See Excerpt

Criminal No. 03-083 (JAG)                                              11

3/12/04, p.6-7); that the dispute between Galiany-Cruz and Carrion-Torres started in 2002; that in April 2001, Galiany-Cruz and Carrion-Torres attempted to take control of the drug point in Las Palmas (See Excerpt 3/11/04, p. 39-40); that Carrion-Torres and Galiany-Cruz were together in March 2001 (See Excerpt 3/11/04, p. 23-26); that in October/November 2001 Galiany-Cruz ordered the murder of Yamil to protect Carrion-Torres (See Excerpt 3/11/04, p. 62; Excerpt 3/12/04, p.88-89); that Mateo-Espada participated in that murder; and that Carrion-Torres participated in the March 2001 murder. The evidence that would impeach Torres-Martinez's testimony amounts to the following: that by October 2001, Galiany-Cruz had tried to take over Carrion-Torres's drug points and a war started between them; that two weeks before March 11, 2002, Carrion-Torres shot at Galiany-Cruz's car; that by March 11, 2002 Carrion-Torres was an associate of the leader of the Last Palmas gang, which was allegedly at war with Galiany-Cruz; and that Mateo-Espada was in New York in October/November 2001. This same evidence, defendants argue, would impeach Bonilla's testimony that Galiany-Cruz and Carrion-Torres were together in a car in March 2001 (Excerpt 3/9/04, p. 10-13) and that Carrion-Torres lent a firearm to Galiany-Cruz in March 2002.

Defendants' arguments do not prevail. The information contained in the DEA Reports falls short from being sufficiently impeaching as to warrant a new trial. Even if it debilitates

testimony given at trial, is not highly impeaching.  First, the testimony that the confidential sources would allegedly give is not specific in nature, whereas the testimony given by Torres-Martinez and Bonilla point to several specific incidents with a degree of detail from personal knowledge that corroborate that a conspiracy did indeed exist between Carrion-Torres and Galiany-Cruz and that they both engaged in acts of violence in furtherance of that conspiracy as of March 2002.  The Court consequently awards more credibility to Torres-Martinez's testimony.  Furthermore, the impeachment evidence is immaterial because it does not bear directly on defendants' guilt or innocence but on other matters.

Regarding the issue of whether Mateo-Espada could have been in Puerto Rico at the time of Yamil's murder, Galiany-Cruz and the Government take opposite sides.  Yet, the absence or presence of Mateo-Espada in Puerto Rico is not a fact that would sufficiently impeach Torres-Martinez's testimony in a way that would give way to a new trial. Even if, *arguendo*, Mateo-Espada was in New York at the time of Yamil's murder, this fact does not impeach Torres-Martinez's testimony as to Galiany-Cruz's involvement in said murder.  It does not bear on the defendant's guilt or innocence. (See United States v. Zuno-Arce, 44 F.3d 1420 (9th Cir. 1995), where the court found that there was no Brady violation where the Government failed to provide defendant with allegedly exculpatory evidence consisting of

a form that suggested that a codefendant was the only murderer whereas a Government witness testified that defendant was a party to murder.)  The Court also finds that the state proceedings Galiany-Cruz points to and the additional DEA Reports discovered in the other cases change nothing about his responsibility for Yamil's murder.  Additionally, Galiany-Cruz cannot raise an issue regarding the FBI report since he himself admits that the Government had provided said report during the trial.

    The suppressed evidence, although it might have helped the defense, does not rise to the level of materiality that would be likely to cause a different result at a new trial - it was cumulative or merely impeaching.  The jury in this case found that the defendants were involved in the drug-trafficking conspiracy charged in the indictment and this result would not likely be changed even if the suppressed evidence was introduced.

    In sum, although the undisclosed information might have helped the defense, viewed in the context of the entire record, the new evidence does not undermine the outcome of the defendants' trial and would not have produced a different result.  Even in the absence of the evidence that was allegedly withheld, the defendants received a fair trial which resulted in a confidence-worthy verdict.  The evidence presented sufficiently established that the defendants were part of the charged conspiracy and that they engaged in the violent crimes charged.  Accordingly, the defendants have not met their

Criminal No. 03-083 (JAG)                                               14

burden in justifying their right to a new trial and their motions for new trial are hereby **DENIED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 21st day of December 2006.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
U.S. DISTRICT JUDGE
